UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ROBERT C. MULLINS,

                    Petitioner,                          **DECISION AND ORDER**
                                                         No. 00-CV-0136
        -vs-

FRED G. BENNETT, Superintendent,

                    Respondent.

_____

## INTRODUCTION

Petitioner, Robert C. Mullins ("Mullins"), filed this *pro se* petition for a writ of habeas

corpus pursuant to 28 U.S.C. § 2254 challenging his conviction in New York State Supreme

Court (Monroe County) on two counts of first degree assault and two counts of second degree

criminal possession of a weapon. The parties have consented to disposition of this matter by the

undersigned pursuant to 28 U.S.C. § 636(c).

## FACTUAL BACKGROUND

Mullins's conviction stems from two separate assaults with a firearm that occurred in the

City of Rochester. Under indictment #454/94 filed July 14, 1994, Mullins was charged as an

accomplice in the July 16, 1993, shooting of Everton Brown, and as a principal in the January 1,

1994, shooting of Bobby Lee. Mullins's severance motion was denied by Monroe County Court

(Malloy, J.). Mullins was tried before a jury and found guilty of all counts in the indictment. The

following factual recitation is taken from the briefs of the petitioner and district attorney on direct

appeal. Citations to the trial transcript are those of the parties.[1]

On July 16, 1993, Everton Brown ("Brown") was shot on the front porch of his home at 195 Adams Street in the City of Rochester. Brown had come to the front door in response to someone calling his name. T.157. When Brown opened the door, he was able to see the person who was calling him, and he identified Mullins as this individual at trial.[2] As soon as Brown came into sight, Mullins stepped aside and a man by his side began shooting at Brown. T.161. The shooter was never identified. Brown turned and ran back inside the house, but the shooter continued firing shots, hitting Brown three times. T.162. At the time of trial, Brown still had a bullet lodged in his hip. Immediately following the assault, Brown was in the hospital for about two months. At the time of trial, he had not been able to work in two years. T.165, 172-74.

Gladys Weems ("Weems"), Brown's girlfriend, told the police that she could identify Mullins as one of the two persons whom she saw on the night of the assault. At trial, however, she testified that she had done so only upon Brown's instruction, and that she now was certain that Mullins was *not* the person whom she saw that night. T.391-92. To rebut Weems's recanting testimony, the prosecution called Wendy Blaesi ("Blaesi"), an employee of the district attorney's office who had spoken with Weems. Blaesi testified that Weems told her that she (Weems) had changed her story and refused to identify Mullins at trial because she was afraid of Mullins. T.500-02.

---

[1] For some reason, respondent never submitted the trial transcripts in connection with its answer. Respondent filed the original *voir dire* transcripts after being ordered to do so by the Court.

[2] Brown apparently testified before the grand jury that he did not know who the two individuals outside of his house were. T.192. However, at trial, Brown stated that he did not recall his grand jury testimony, and that he knew all along that it was Mullins who was on the porch with the person who shot him, although he did not know Mullins's name at the time. T.194-95.

On January 1, 1994, Bobby Lee ("Lee") answered a knock on his front door and, when he stepped outside, found Mullins standing there. T.43. Lee knew Mullins from having worked for him as a deejay in the past. T.45. Lee testified that he and Mullins stood face-to-face and were talking for a while. According to Lee, Mullins was saying that he had been robbed and that he knew Lee knew the "niggers" who did it. T.45, 50. Lee described Mullins as "fidgety" during their conversation. Suddenly, Mullins pulled out a .38 caliber gun. Lee began to run away, but he fell down. Mullins then walked up and shot Lee twice as he laid on the ground. Several months after the shooting, however, Lee signed an affidavit for an investigator employed by the defense in which he stated that Mullins was *not* the shooter. Lee repudiated this affidavit at trial, stating that it was the result of intimidation by Mullins. T.105-30.  Lee's girlfriend, Wanda Cajigas ("Cajigas") witnessed the assault from inside Lee's house and testified at trial that she recognized Mullins after having met him once on the night before the shooting. T.140-45.

Some months after the January shooting, a .38 Beretta was recovered during an unrelated arrest of an individual who was not involved in the Lee and Brown incidents. According to the ballistics expert's examination of the bullet casings found at the crime scenes, this .38 Beretta was the same pistol that had been used to fire the shots at both Brown and Lee. T.314-16, 323-25. The expert testified that a spent bullet found at the scene of the Lee shooting was fired from the .38 Beretta and that a bullet recovered from the victim was consistent with having been fired from that pistol as well. (The remains of the second bullet were insufficient to make a final determination.)

Mullins did not testify in his behalf or call any witnesses but rather relied upon a defense of mis-identification with respect to both incidents. The jury convicted Mullins of all counts in

the indictment. He was sentenced to twelve years to life on each of the four counts, with the

sentences for the two charges arising from each incident to be served concurrently to each other

but consecutively to the sentences for the other incident.

## PROCEDURAL HISTORY

Represented by new counsel, Mullins appealed to the Appellate Division, Fourth

Department, of New York State Supreme Court, which unanimously affirmed the conviction.

*People v. Mullins*, 668 N.Y.S.2d 799 (App. Div. 4th Dept. 1998). The New York Court of

Appeals denied leave to appeal. *People v. Mullins*, 680 N.Y.S.2d 649 (N.Y. 1998).

On June 17, 1999, Mullins petitioned the Appellate Division, Fourth Department, for a

writ of error *coram nobis* on the ground that his appellate counsel was ineffective in failing to

raise on direct appeal a properly preserved claim under *Batson v. Kentucky*, 476 U.S. 79 (1986).

The Appellate Division denied Mullins's application in a summary order. Mullins appealed the

decision to the New York State Court of Appeals; on January 12, 2000, that court dismissed the

appeal because, at that time, denials of *coram nobis* applications were not appealable under New

York's Criminal Procedure Law § 450.90(1).

This *pro se* habeas petition pursuant to 28 U.S.C. § 2254 followed in which Mullins

asserts three grounds for relief: (1) that he was denied his right to due process when the trial

court denied his severance motion; (2) that he was denied his right to due process because the

evidence was insufficient to convict him with respect to all four counts of the indictment; and (3)

that he was denied his Sixth Amendment right to effective assistance of appellate counsel due to

his attorney's failure to raise a *Batson* argument on direct appeal. In its answer to the petition,

respondent argued that the severance claim and the evidentiary insufficiency claim were "without

foundation or merit." Respondent also alleges that the insufficiency claim is unexhausted.

On March 20, 2003, the Federal Public Defender's Office was appointed to represent Mullins. During a status conference held on April 21, 2003, respondent moved to dismiss the ineffective assistance of counsel claim on several grounds, including that the claim improperly was raised as part of an untimely second petition. The Court denied the motion in an order entered May 26, 2005 (Docket #21), and directed respondent to bear the costs of producing the *voir dire* transcripts necessary for disposition of Mullins's ineffective assistance of counsel claim. The matter is now fully submitted and ready for decision. For the reasons set forth below, the petition is granted.

## DISCUSSION

### Exhaustion

A petitioner must exhaust all available state remedies either on direct appeal or through a collateral attack of his conviction before he may seek a writ of habeas corpus in federal court. 28 U.S.C. § 2254(b)(1); *Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir. 1994), *cert. denied*, 514 U.S. 1054 (1995). The exhaustion of state remedies requirement means that the petitioner must have presented his constitutional claim to the highest state court from which a decision can be obtained. *See Morgan v. Bennett*, 204 F.3d 360, 369 (2d Cir. 2000) (citing *Grey v. Hoke*, 933 F.2d 117, 119 (2d Cir. 1991)). A claim is properly exhausted when the state court is fairly apprised of the claim's federal nature and of the factual and legal premises underlying the claim. *Grey*, 933 F.2d at 119-20.

Respondent raises non-exhaustion as a defense only with respect to Mullins's insufficiency-of-the-evidence argument, stating that petitioner "failed to raise this in the New

York State Court of Appeals." Respondent's Answer at 4 (Docket #7). It appears, however, the

Mullins has withdrawn his insufficiency-of-the-evidence claim. First of all, in his reply

memorandum of law, Mullins only argued the ineffective assistance of appellate counsel claim

and the denial of severance claim. *See* Petitioner's Reply Memorandum of Law (Docket #11). In

addition, Mullins wrote that "[p]etitioner concedes to point II of respondent's answer."

Petitioner's Memorandum of Law at 4 (Docket #11).  Mullins evidently is referring to Point II of

respondent's memorandum of law, which is attached to its answer to the petition.

In Point II, respondent argues that Mullins's insufficiency-of-the-evidence claim is

without merit. *See* Respondent's Memorandum of Law at 4 (Docket #). In the last paragraph of

the memorandum, respondent adds that the claim is also unexhausted for unspecified reasons;

respondent provides no further argument on this point. Based upon Mullins's failure to argue the

insufficiency claim in his reply memorandum of law, and his unequivocal statement that he does

not contest respondent's arguments regarding his insufficient evidence claim, the Court

concludes that Mullins has evidenced an intent to withdraw this claim. Accordingly, it is deemed

withdrawn and will not be considered as one of Mullins's claims for habeas relief.

## Legal Standard

Because the filing of this petition postdates the enactment of the Anti-terrorism and

Effective Death Penalty Act of 1996 ("AEDPA"), AEDPA's revisions of 28 U.S.C. § 2254

govern this proceeding.  *See Williams v. Taylor*, 529 U.S. 362, 402 (2000). When Congress

enacted Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), it "significantly

curtailed the power  of federal courts to grant the habeas petitions of state prisoners." *Lainfiesta*

*v. Artuz*, 253 F.3d 151, 155 (2d Cir. 2001) (citing *Williams*, 529 U.S. at 399). A Federal court

may not grant a habeas petition on a claim that was adjudicated on the merits in State court

unless that adjudication "resulted in a decision that was contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of the United

States." 28 U.S.C. § 2254(d)(1), (2). Thus, review under AEDPA is presumptively deferential to

a denial of relief by the state court, assuming that the claim was adjudicated on the merits.[3]

However, the Second Circuit has refused to interpret this so-called "AEDPA deference" as "blind

obedience." *Gutierrez v. McGinnis*, 389 F.3d 300, (2d Cir. 2004).

## Merits of the Petition

### 1.     Denial of Severance Motion

Mullins contends that he should have had separate trials with respect to the charges

stemming from the Lee shooting and the Brown shooting. "Joinder of offenses rises to the level

of a constitutional violation only if it actually render[s] petitioner's state trial fundamentally

unfair and hence, violative of due process."  *Herring v. Meachum*, 11 F.3d 374, 377 (2d Cir.

1993) (quoting *Tribbitt v. Wainwright*, 540 F.2d 840, 841 (5th Cir. 1976), *cert. denied*, 430 U.S.

910 (1977)).  The Second Circuit has explained that as a general rule in federal court, the

decision whether to grant a severance is "'committed to the sound discretion of the trial judge.'"

*Grant v. Hoke*, 921 F.2d 28, 31 (2d Cir. 1990) (quoting, *inter alia*, *United States v. Casamento*,

887 F.2d 1141, 1149 (2d Cir.1989), *cert. denied*, 493 U.S. 1081, 110 S.Ct. 1138, 2175, 2564, 107

L.Ed.2d 1043 (1990)). A defendant seeking to overturn a denial of a severance motion,

---

[3] The Appellate Division's denial of Mullins's *coram nobis* application constituted an "adjudicat[ion] on the merits" under § 2254(d), despite its failure to discuss or make explicit reference to Mullins's Federal claim. *Sellan v. Kuhlmann*, 261 F.3d 303, 314 (2d Cir. 2001)  Thus, I am required to apply the deference mandated under AEDPA to Mullins's claim.

furthermore, must show that he was "so severely prejudiced by the joinder as to have been denied

a fair trial, not that he might have had a better chance for acquittal at a separate trial." *Id.*

(quotations and citations omitted); *see also Herring*, 11 F.3d at 377-78 ((holding that a defendant

claiming a due process violation based upon joinder of offenses "must, to succeed, go beyond the

potential for prejudice and prove that *actual* prejudice resulted from the events as they unfolded

during the joint trial") (quoting *Tribbitt*, 540 F.2d at 841 (joinder must "actually" render trial

fundamentally unfair before habeas relief is appropriate)) (emphasis in original). The burden of

proof borne by a petitioner seeking to overturn a state court conviction on the basis of improper

denial of severance is "[a]t least " as great as that of a federal defendant on direct review. *Id.*

(citation omitted).

Mullins's main contention is that the trial court's instructions to the jury were

constitutionally erroneous because they effectively allowed the jury to commingle the evidence

with respect to the two separate assaults. In particular, Mullins points to the court's statement

that "there are two sets of charges, two separate incidents, so the essential elements will be the

same for each of the two incidents, although there is one that is a little different, because there is

a claim that he [Mullins] acted as an accomplice. I will explain what that is." Petitioner's Reply

Memorandum of Law at 3 (quoting T.576) (Docket #11). This is not an incorrect statement. By

"elements," the court was referring to the elements making up the criminal offense with which

Mullins was charged. As the court stated, the two incidents led to Mullins being charged with the

same offenses for both. Thus, the elements of first degree assault, for instance, would be the

same regardless of whether the jury was considering the Brown shooting or the Lee shooting.

Mullins thus has not made the required showing that joinder of the counts actually prejudiced his

right to a fair proceeding.

> **2.**     **Ineffective Assistance of Appellate Counsel – Failure to Raise *Batson* Claim**

As an initial matter, the Court notes that the constitutional right to effective assistance of counsel extends to appellate counsel. *Sellan v. Kuhlmann*, 261 F.3d at 315 (citing *Evitts v. Lucey*, 469 U.S. 387, 396 (1985)). In deciding this claim, the issue before the Court is whether the Appellate Division unreasonably applied *Strickland v. Washington*, the clearly established Supreme Court precedent that governs resolution of ineffective assistance of counsel claims, to the facts of Mullins's case. A State court decision is an "unreasonable application" of Supreme Court precedent if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular case." *Williams*, 529 U.S. at 407-08.

To show that his counsel's representation was ineffective under *Strickland*, Mullins must establish that (1) the attorney's performance fell below an objective standard of reasonableness; and (2) the deficient representation prejudiced the defense. *See Strickland*, 466 U.S. at 687. The *Strickland* two-pronged standard applies equally to claims of ineffective assistance of appellate counsel. *E.g.*, *Claudio v. Scully*, 982 F.2d 798, 803 (2d Cir. 1992), *cert. denied*, 508 U.S. 912, 113 S.Ct. 2347, 124 L.Ed.2d 256 (1993). This Court then must view the claim through the lens of 28 U.S.C. § 2254(d)(1) in order to determine not whether the state court was incorrect or erroneous in rejecting Mullins's ineffective assistance claim, but whether it was "objectively unreasonable" in doing so. *Sellan v. Kuhlmann*, 261 F.3d at 315 (citing *Williams*, 529 U.S. at 409 (O'Connor, J., for the Court, Part II)). The Second Circuit has held that for a state court's adjudication to be "objectively unreasonable," there must be "[s]ome increment of incorrectness beyond error[.]" *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks

and citations omitted); *accord, e.g.*, *Sellan*, 261 F.3d at 315. However, "the increment need not be great; otherwise habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Id.*; *accord Sellan*, 261 F.3d at 315.

The failure to raise a meritorious argument based on purely state law grounds may form the basis of a federal habeas petition alleging ineffective assistance of appellate counsel: "[t]he claim whose omission forms the basis of an ineffective assistance claim may be either a federal-law or state-law claim, so long as the 'failure to raise the state . . . claim fell outside the wide range of professionally competent assistance.'" *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (quoting *Claudio v. Scully*, 982 F.2d 798, 805 (2d Cir. 1992) (quoting *Strickland*, 466 U.S. at 690)). In attempting to establish that appellate counsel's failure to raise a state claim constitutes deficient performance, it is insufficient for the petitioner to show "merely that counsel omitted a nonfrivolous argument, for counsel does not have a duty to advance every nonfrivolous argument that could be made." *Id.* (citing *Jones v. Barnes*, 463 U.S. 745, 754 (1983)). Whether the neglected appellate issue is based on federal or state law, the burden rests on Mullins to show "that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Id.* In assessing appellate counsel's performance, I must judge the conduct at issue on the basis of the facts of the particular case, viewed as of the time that counsel was preparing the appeal. *Strickland*, 466 U.S. at 690. Furthermore, I must make every attempt to eliminate the distorting effects of hindsight from my evaluation of his performance. *See Lockhart v. Fretwell*, 506 U.S. 364 (1993); *accord Mayo*, 13 F.3d at 533.

### a.       **Appellate Counsel's Pursuit of Significantly Weaker Issues**

On direct appeal, counsel's two main points were that the severance motion should have

been granted and that there was no proof beyond a reasonable doubt that Mullins was an accomplice in the shooting of Everett Brown. Petitioner's Appellate Brief at iii, attached as "Appendix B" to Respondent's Answer (Docket #7). Counsel then addressed the arguments under four point headings: (1) the "single trial for the two assaults that were not otherwise factually connected was inherently prejudicial to the right of the defendant to receive a fair trial; (2) there was "no proof beyond a reasonable doubt that Mullins was an accomplice in the assault on Everton Brown; (3) joinder of the four counts of the indictment "cannot be justified on the basis of the admissibility of evidence of one assault as proof of the other"; and (4) the "prosecution deliberately did all it could to exaggerate the extent of the prejudice" caused by the joint trial. Points one and three both related to counsel's argument that severance was improperly denied; point two made an insufficiency-of-the-evidence argument, and point four asserted that the prosecutor committed misconduct during the trial.

### i.    The Issue of Denial of Severance

The Appellate Division held that "[b]ecause the evidence with respect to the assault in which defendant was charged as a principal was admissible to establish identity and intent with respect to the assault in which he was charged as an accomplice, the criminal transaction were properly jointed under [New York Criminal Procedure Law] section 200.20(2)(b). Once the offenses were properly joined, Supreme Court 'lacked statutory authority to sever.' We have examined defendant's remaining contentions and conclude that they are without merit." *People v. Mullins*, *supra* (citing, *inter alia*, *People v. Bongarzone*, 69 N.Y.2d 892, 895; *People v. Lane*, 56 N.Y.2d 1, 7).  Based upon my review of the applicable case law and statutory provisions, I must agree with petitioner that appellate counsel chose a particularly weak argument for appeal. A

defendant may seek a discretionary severance *only* if the charges were joined pursuant to C.P.L. § 200.20(3)(c), which allows joinder of "offenses defined by same or similar statutory provisions." N.Y. Crim. Proc. Law § 200.20(3). Because the charges against Mullins were joined pursuant to C.P.L. § 200.20(3)(b), which provides for joinder when proof of one offense would be material and admissible in evidence upon a trial of the other offense, the trial court clearly had no statutory authority to sever. Thus, I agree with Mullins that it was pointless for appellate counsel to have bothered raising the severance argument.  The insufficiency-of-the-evidence and prosecutorial misconduct arguments were somewhat stronger than the severance argument, but that is not saying much. The Appellate Division summarily rejected both arguments as without merit as well. I next examine the insufficiency claim solely for the purpose of evaluating appellate counsel's performance.

### ii.    The Issue of Insufficiency of the Evidence

Under the extremely stringent test set forth in *People v. Bleakley*, 69 N.Y.2d 490, 515 N.Y.S.2d 761, 763 (N.Y. 1987), the evidence was certainly sufficient to convict Mullins of the assault on Brown under an accomplice theory of liability. After all, to sustain a conviction, the court need only find that there is "any valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the basis of the evidence at trial and as a matter of law satisfy the proof and burden requirements for every element of the crime charged." *Id.* Moreover, it is quite rare for a defendant to prevail on an insufficiency claim, even on direct review.

Appellate counsel's main argument in this regard was that it was not enough merely to prove that Mullins was present at the time of the Brown shooting in order to convict him an

accomplice; rather the prosecution was required to show that the "reason [Mullins] was there was to facilitate the assault." Since there was no evidence introduced as to who actually fired the shots at Brown, counsel argued, there was no evidence that Mullins and the unknown shooter "planned or designed or agreed to the assault." Contrary to appellate counsel's contention, there did not need to be a pre-existing design or plan between the shooter and Mullins in order to convict Mullins as an accomplice.[4] There was direct evidence–namely, the testimony of Brown, the victim–that Mullins called out to him several times to get him to come to the door. Once Brown opened the door, the shooter began firing. A rational trier of fact easily could have relied on this evidence to find that the prosecution had proved, beyond a reasonable doubt, that Mullins "intentionally aid[ed]" the shooter, *see* N.Y. Penal Law § 20.00, in assaulting Brown. Thus, this appeal choice by appellate counsel was, as a practical matter, a non-starter.

### iii.      The Issue of Prosecutorial Misconduct

The prosecutorial misconduct argument, which was intertwined with the severance issue, was a non-starter as well. Appellate counsel argued that the prosecutor improperly referred to the two assaults as a single event and that, "by mixing and matching" the two crimes, the jury was misled as to the nature and quality of the proof. The two examples given by appellate counsel in his brief were nothing more than strenuous advocacy on the part of the prosecutor, and they were not even improper argument. Appellate counsel did not come close to establishing a claim of prosecutorial misconduct. *See*, *e.g.*, *People v. Crump*, 254 A.D.2d 742, 680 N.Y.S.2d 765 (App.

---

[4] Section 20.00 of New York's Penal Law provides that "[w]hen one person engages in conduct which constitutes an offense, another person is criminally liable for such conduct when, acting with the mental culpability required for the commission thereof, he solicits, requests, commands, importunes, or intentionally aids such person to engage in such conduct." N.Y. Penal Law § 20.00.

Div. 4th Dept. 1998) ("Prosecutorial misconduct warrants reversal only when the conduct has

caused such substantial prejudice to the defendant that he has been denied due process of law or

where the prosecutor's remarks, viewed in the totality of the circumstances, are so egregious as to

deprive defendant of a fair trial.") (internal citations and quotation marks omitted).

### B.  Analysis of the *Batson* Claim

Returning now to Mullins's *Batson* claim, I note that Mullins faults appellate counsel for

overlooking the stronger *Batson* claim in favor of pressing the foregoing weak issues. He asserts

that "[g]iven the law as developed in the New York State Supreme Court, Appellate Division"

concerning the *Batson* claim, there was a "reasonable probability" that the court reviewing

Mullins's direct appeal "would have found the prosecutor's reasons for striking the sole black

juror in the *venire* improper under *Batson*." Petitioner's Supplemental Memorandum of Law at

19 (Docket #27). In *Mayo v. Henderson*, the Second Circuit quoted with approval the Seventh

Circuit's instructions for examining a claim of ineffective assistance of counsel is based on

failure to raise viable issues:

> [T]he district court must examine the trial court record to determine whether
> appellate counsel failed to present significant and obvious issues on appeal.
> Significant issues which could have been raised should then be compared to those
> which were raised. Generally, only when ignored issues are clearly stronger than
> those presented, will the presumption of effective assistance of counsel be
> overcome.

*Mayo*, 13 F.3d at 533 (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1985)).

The Second Circuit has explained that "[t]o establish prejudice in the appellate context, a

petitioner must demonstrate that there was a 'reasonable probability' that [his] claim would have

been successful before the [state's highest court].'" *Mayo*, 13 F.3d at 534 (quoting *Claudio*, 982

-14-

F.2d at 803) (footnote omitted in original)). In *Claudio*, the Second Circuit held that appellate counsel's failure to raise a claim that petitioner, on a pre-trial appeal of the admissibility of his confession, was denied his right to the effective assistance of counsel under Article 1, § 6 of the state constitution, had a "reasonable probability"of success before the New York Court of Appeals *despite* the Appellate Division's decision to deny the claim. Thus, the *Claudio* panel found, the petitioner had proven the prejudice prong of *Strickland*.

After concluding in *Claudio* that petitioner clearly was prejudiced by counsel's failure to argue the Article I, § 6 issue, the Second Circuit in also found that appellate counsel's performance fell "'outside the wide range of professionally competent assistance,'" *id.* (quoting *Strickland*, 466 U.S. at 690). According to the Second Circuit, "[n]o reasonably competent attorney should have missed" the omitted claim "even though the Appellate Division ultimately rejected it," *id*. (noting that "the Appellate Division raised the claim *sua sponte*, conceded the important issue that the right to counsel had attached, and addressed more attention to the state constitutional claim than it did to the federal issue").

Mullins contends that appellate counsel was unreasonable in failing to include on direct appeal a *Batson* claim regarding the dismissal of the one black juror in the venire, Mamie Thompson, pursuant to the prosecutor's exercise of a peremptory strike. T.196. Defense counsel raised an objection based on *Batson* and requested that the prosecutor be directed to offer a race-neutral reason for striking her. The prosecutor responded as follows:

> The first point I would like to make is that all of the civilian witnesses and the victims in this a case are – or two separate cases, are African-Americans, so I think that lessens the impact, so to speak, for any type of racial confrontation aspects that might be evident in a case where you have an African-American on one side and Hispanics or White, or some other racial group on the other side.

The other point that I wanted to make is the person in question here, to my knowledge, she appeared to be the only African-American person on the panel, she indicated that she did work, but the problem I had was that she worked at an agency which was – primarily dealt with social work. She had contact with many, many social workers who were her friends. And my preference is not to have people from that background. I would rather have people that are ready to make decisions, than people that are interested in perhaps solving problems or taking into account other societal factors, so that is one of the preferences I have in choosing jurors.

I will note for the record, that Diane Niedermeier, who was a female white, and Connie Guerrieri, who is also a female white, both of them had ties to social work. Ms. Niedermeier was a Director of a substance abuse restart program. Connie Guerrieri had a Masters Degree in Social Work from the University of Buffalo. Both of those white jurors also were perempted [*sic*] by me.

In addition, Mamie Thompson also indicated that she read Sigmund Freud, which set off a bell with me, indicating that perhaps tied her more closely to social work or sort of delving further into emotional and psychological causes that needed to be – that I am uncomfortable with, from a member of the jury.

And she also couldn't remember how many kids she had. She said that she had three kids, when she was questioned by the Court. And she, when I got back up there to re-question her, she indicated to me that she had four kids. And sometimes she couldn't remember, and she seemed to me to be a little bit skittish, again, a quality I am not comfortable with from a juror.

T.196-98. The prosecutor also asserted that counsel's *Batson* objection was not timely made.

However, it was made prior to the conclusion of jury selection, and it was not untimely. *See*

*People v. Bolling*, 79 N.Y.2d 317, 321, 591 N.E.2d 1136, 582 N.Y.S.2d 950 (N.Y. 1992) ("We

conclude that a defendant may assert a claim that peremptory challenges are being used for

discriminatory purposes when those challenges are exercised, regardless of whether jury selection

has been completed.")

Defense counsel responded that there did not seem to be "much in the way of contact"

with social workers since Thompson worked in food service, and that any contact did not rise to

a level of "having a lot of friends or much involvement in social work, certainly not the same as

the other social workers that were stricken." The court denied counsel's motion for a mistrial and

denied the *Batson* application, stating that he was "satisfied there were racially neutral reasons for the exercising of the peremptory challenge." T.200.

The Supreme Court in *Batson v. Kentucky* held that the "State's privilege to strike individual jurors through peremptory challenges, is subject to the commands of the Equal Protection Clause,"and thus it is forbidden to use of peremptory challenges solely for the discriminatory purpose of excluding persons of a particular race from serving on a jury. 479 U.S. at 89. Such discriminatory use of peremptory challenges also violates the Equal Protection Clause of New York's State Constitution. *See* N.Y. Const., art. I, § 11; *People v. Kern*, 75 N.Y.2d 638, 649, 555 N.Y.S.2d 647, 652, 554 N.E.2d 1235, 1240 (1990). A "structural error," in contrast to a mere "trial error," undermines "'[t]he entire conduct of the trial from beginning to end'" and is not subject to harmless error review.  *Tankleff v. Senkowski*, 135 F.3d 235, 248 (2d Cir. 1998) (quoting *Arizona v. Fulminante*, 499 U.S. 279, 309-10 (1991)).  "Because the effects of racial discrimination during voir dire 'may persist through the whole course of the trial proceedings,'" a *Batson* claim is a "structural error" that is not subject to harmless error review. *Id.* (quoting *Powers v. Ohio*, 499 U.S. 400, 412 (1991)).

Mullins acknowledges that there is New York state case law recognizing that a person's employment may constitute a legitimate race-neutral reason for excluding someone from a jury. In particular, the Fourth Department of the Appellate Division has held that a "person's employment or lack of employment may, in an appropriate case, constitute a legitimate race-neutral reason for exclusion[.]" *People v. Duncan, supra* (citing Colbert, *Challenging the Challenge: Thirteenth Amendment as a Prohibition Against the Racial Use of Peremptory Challenges*, 76 CORNELL L.REV. 1, 97-98 (1990); Serr and Maney, *Racism, Peremptory*

*Challenges, and the Democratic Jury: The Jurisprudence of a Delicate Balance*, 79 J. CRIM. L. &

CRIMINOLOGY, 1, 45 (1988)).  However, the prosecutor's proffered reason for striking the jury

must be case-specific, *i.e.*, "related to the factual circumstances of the case or a particular jury

issue[.]" *Id.*; *accord People v. Smith*, 266 A.D.2d 570, 699 N.Y.S.2d 104 (App. Div. 2d Dept.

1999) ("Where a peremptory challenge is based upon a prospective juror's employment, the

concerns regarding the employment must be related to the factual circumstances of the case, and

the qualifications of the juror to serve on that case."). Furthermore, even one racially-motivated

challenge is sufficient to trigger the protections of *Batson*. *E.g.*, *People v. Jenkins*, 75 N.Y.2d

550, 557, 555 N.Y.S.2d 10, 554 N.E.2d 47 (N.Y. 1990).

Mullins argues that because the prosecutor's peremptory challenge was based upon

Thompson's place of employment, he was required to relate the concerns about the employment

to the factual circumstances of his case and her qualifications to serve on the case. Because the

prosecutor did not do this, as required by New York state law as developed in the Appellate

Division's Fourth and other departments, Mullins asserts that he had a reasonable probability of

success on appeal had counsel raised a *Batson* issue. I agree with Mullins that counsel was

unreasonable in neglecting to brief this claim, and that this omission prejudiced Mullins on direct

appeal.

For example, in *People v. Duncan*, the prosecutor exercised a peremptory strike with

respect to a prospective black female juror who was a "monitor technician" at a local hospital,

citing concerns about her employment. In reversing the conviction in *Duncan*, the Fourth

Department in its analysis cited with approval *Williams v. State*, 507 N.E.2d 997, 999 (Ind. Ct.

App. 1987), in which court *approved* the peremptory exclusion of a prospective black juror in a

rape case on the basis of her employment as a social worker. In *Williams*, the prosecutor's proffered reason was that, because of her employment as a social worker, the juror might have a liberal view of sexual behavior. Thus, the prosecutor was able to tie the concerns about the juror's employment to the subject matter of the charges against the defendant.

As an example of a case in which the prosecutor's reason was not related to the case before the court, the *Duncan* court cited *State v. Butler*, 731 S.W.2d 265, 272 (Mo. Ct. App. 1987), a case involving the prosecution of charges of robbery and armed criminal action. In *Butler*, the court rejected a prosecutor's explanation that in his experience, nurses were "compassionate" and would be "inclined to feel sorry for defendants." The court held that "the prosecutor's prior experience [was] not a reason 'related to the case to be tried.'" *Butler*, 731 S.W.2d at 272 (quoting *Batson*, 476 U.S. at 97).

In *Duncan*, the prosecutor classified all persons who were "monitor technicians" as "easily satisfied," "not real concerned with what [they] [did] on a day-to-day basis" and stated that such persons "really don't give a damn." The prosecutor suggested that he did not want these qualities in persons involved in jury service on a serious criminal case, but, as the court said, he "articulated no basis for concluding that the prospective juror possessed these qualities or that she [the challenged juror] would be unable to perform diligently and attentively her jury responsibilities." *People v. Duncan*, *supra*. Even more important, in the Fourth Department's view, was that "the prosecutor failed to articulate any observation (appearance, demeanor, response to questions) that would place the juror within the stereotype or profile." The Fourth Department decried this type of "presumed group bias," stating that it was "not a legitimate basis for the exercise of a peremptory challenge." *Id.* (citing *State v. Gilmore*, 511 A.2d 1150 (N.J)). I

note that the Fourth Department's decision in *Duncan* was upheld by the state's highest court on appeal.

At Mullins's trial, the prosecutor stated that his "preference" was "not to have people from that [a social work] background." The prosecutor said that he "would rather have people that are ready to make decisions, than people that are interested in perhaps solving problems or taking into account other societal factors[.]" First of all, the prosecutor blatantly misrepresented Thompson's *voir dire* responses. Thompson never said that she had a background in social work–she was a food service supervisor who merely *happened to be employed* at a facility that provided mental health services. In response to the prosecutor's leading question, "So you know a lot of social workers that work there, as well, obviously?" Thompson replied, "Yes." Yet again, the prosecutor misstated her responses because, contrary to the prosecutor's direct statements and insinuations, Thompson never stated that she was "friends" with "many, many" social workers at her job. In any event, even if Thompson did have a background in social work, which she did not, as in *Duncan*, the prosecutor at Mullins's trial "did not relate his concerns about the prospective juror's employment to the factual circumstances of the case." *People v. Duncan*, *supra*; *People v. Campos*, 736 N.Y.S.2d 108 (App. Div. 2d Dept. 2002). Secondly, the vague explanation proffered by the prosecutor is strikingly similar to the ones that were rejected in *People v. Duncan* and *State v. Butler*, which the *Duncan* court cited with approval. I do not believe that a reviewing court would disagree with the proposition that the prosecutor's reason for striking Thompson was "grounded in a stereotype of dubious validity" and there was "no evidence" that she "possessed the qualities supposedly inherent in that stereotype." *People v. Duncan*, *supra.*

The prosecutor pointed out that he also struck two white females who had a

"background" in social work, presumably making this claim to convince the trial judge that his motive in striking Thompson was non-discriminatory since he was consistently pursuing his avowed purpose of striking social workers regardless of race.  Yet only one of them, Connie Guerrieri, actually had such a background: she had just received her masters degree in social work and was looking for a job. Like Thompson, Diane Neidemeier (the other juror struck because of her employment) merely worked at a facility that provided social services–she was an operations and facility operations manager for a local substance abuse service called the Catholic Family Center. T.141, 172. She affirmatively stated that her position was "strictly management" and that she had no background in social work whatsoever. However, simply because the prosecutor also relied upon the same improper stereotype about individuals with a supposed "background" in social work to peremptorily strike two white female jurors is of no moment. The fact remains that the prosecutor's concerns about the struck black female juror's employment were not related to the facts of Mullins's case, as New York state case law requires them to be.

As Mullins aptly points out, the prosecutor had no issue with seating John Houston ("Houston"), who was a boiler operator at Monroe County's Iola health facility campus, which includes Monroe Community Hospital and Monroe County Health and Social Services. Surely, Houston could have, and probably did, come into contact with social workers while he was at his employment. Tellingly, however, Houston was a white male.

Finally, I note that the prosecutor also described Thompson as "skittish" which was a quality he tried to avoid in a juror. However, this is a reason that the Appellate Division most probably would have found could not overcome the pretextual nature of the prosecutor's reason. *See People v. Robinson*, 226 A.D.2d 561, 640 N.Y.S.2d 613 (App. Div. 2d Dept. 1996)  (noting

that defense counsel's statement that he did not "get a good feel" from this prospective juror was "purely intuitive") (citing *People v. Richie*, 217 A.D.2d 84, 635 N.Y.S.2d 263 (App. Div. Dept.)).

The Fourth Department has made clear that where a peremptory challenge is based upon a prospective juror's employment, "the concerns regarding the employment must be related to the factual circumstances of the case, and the qualifications of the juror to serve on that case." *People v. Duncan, supra*. Given that there was on-point, favorable precedent from the same court which was going to be reviewing Mullins's conviction, it was not reasonable for appellate counsel to overlook the *Batson* issue. Moreover, based on its statements in *Duncan*, there is a reasonable probability that the Fourth Department would have been receptive to Mullins's *Batson* claim and would have found the prosecutor's reason for striking Thompson to be pretextual. *See People v. Duncan*, *supra* ("To recognize the proffered explanation as valid and legitimate would, in our view, emasculate the constitutional protection recognized in *Batson*, and we refuse to do so.").

As discussed above, the majority of appellate counsel's brief focused on the severance issue, which was not even a colorable state law claim. The remaining two issues were not precluded outright by statute, as the severance claim was, but they were barely viable--Mullins had no real chance of succeeding on those claims on appeal.[5] After reviewing the state case law

---

[5] I note that Mullins actually filed a grievance against his appellate counsel with the state Professional Performance Committee, which found that there had been a "failure of performance" on the part of Mullins's counsel. In particular, the committee found that counsel failed to communicate with his client and keep him informed as to the status of his appeal; failed to timely perform his duties in connection with perfecting his client's appeal; and failed to respond adequately to his client's complaint. *See* Letter dated June 17, 1999, attached as an exhibit to Docket #4.

and the complete transcript of the *voir dire*, I am convinced that, by comparison, the *Batson* issue

was "clearly stronger" than those presented by counsel on direct appeal. There simply is no basis

for saying that appellate counsel chose not to include the *Batson* issue because he was

"winnowing out weaker arguments" and "focusing on" those more likely to prevail, *Smith*, 477

U.S. at 536, 106 S.Ct. 2661 (quotation omitted). Rather, counsel overlooked the strongest state

law argument that his client had in favor of barely colorable claims. In light of the foregoing, I

am compelled to conclude that it was an "unreasonable application" of *Strickland* for the

Appellate Division to have resolved the deficient-performance aspect of Mullins's ineffective

assistance of counsel claim against him. *Cf. Sellan*, 261 F.3d at 317 (in a post-AEDPA case,

finding that appellate counsel was not deficient because the state court was aware that counsel

raised other strong claims in her appellate brief and that in her professional judgment, at the time

she filed her brief, the arguments she did raise were more likely to succeed than the argument

that she omitted; in addition, the Appellate Division held that one claim raised on direct appeal

was meritorious, though it ultimately found the error harmless).  Moreover, given the Fourth

Department's decision in *People v. Duncan*, there is a reasonable probability that the *Batson*

claim would have been successful before that Court and that the New York Court of Appeals

would not have reversed. Thus, Mullins is able to demonstrate that he was prejudiced by

counsel's omission. Habeas relief therefore is warranted on Mullins's Sixth Amendment claim.

## CONCLUSION

Petitioner Robert C. Mullins's petition for a writ of habeas corpus is granted based on his

claim that his appellate counsel was ineffective for failing to raise a *Batson* claim on direct

appeal. The prisoner shall be released unless within sixty days the state commences prosecution

or takes other action appropriate in light of this decision. This decision is stayed until all appellate proceedings are completed and a final mandate is received by this court.

No certificate of appealability is granted with respect to petitioner's remaining claims, petitioner having made no substantial showing of the denial of a constitutional right. Petitioner is reminded that he may seek a certificate of appealability on these claims from the Court of Appeals for the Second Circuit.

**IT IS SO ORDERED**

/s/ *Victor E. Bianchini*

_____

VICTOR E. BIANCHINI
United States Magistrate Judge

DATED:      January 12, 2006
            Rochester, New York.